IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| TAMMY SUE MORIES,<br><br>Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | CASE NO. 3:25-CV-02220-JRK<br><br>JUDGE JAMES R. KNEPP, II<br>UNITED STATES DISTRICT JUDGE<br><br>MAGISTRATE JUDGE<br>JONATHAN D. GREENBERG<br><br>**REPORT AND RECOMMENDATION** |

Plaintiff, Tammy Sue Mories ("Plaintiff" or "Mories"), challenges the final decision of Defendant, Frank Bisignano, Commissioner of Social Security ("Commissioner"), denying her application for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* ("Act"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

## I. PROCEDURAL HISTORY

In December 2021, Mories filed an application for POD and DIB, alleging a disability onset date of March 28, 2020, and claiming she was disabled due to coronary artery disease, Hashimoto's disease, arthritis, shoulder pain, and high blood pressure. (Transcript ("Tr.") 15, 68.) The application was denied initially and upon reconsideration, and Mories requested a hearing before an administrative law judge ("ALJ"). (*Id.* at 15.)

On June 6, 2024, an ALJ held a hearing, during which Mories, represented by counsel, and an impartial vocational expert ("VE") testified. (*Id.*) On October 25, 2024, the ALJ issued a written decision finding Mories was not disabled. (*Id.* at 18-30.) The ALJ's decision became final on August 21, 2025, when the Appeals Council declined further review. (*Id.* at 1-6.)

On October 17, 2025, Mories filed her Complaint to challenge the Commissioner's final decision. (Doc. No. 1.) The parties have completed briefing in this case. (Doc. Nos. 8, 12-13.) Mories asserts the following assignments of error:

(1) The ALJ failed to comply with 20 C.F.R. § 404.1520c(b)(2) or support with substantial evidence her analysis of Dr. Hill's and Dr. Chen's Prior Administrative Medical Findings. This prevents a finding of substantial evidence for the RFC and finding of non-disability.

(2) The ALJ failed to comply with 20 C.F.R. § 404.1520c(b)(2) or support with substantial evidence her analysis of Dr. Wagner's Medical Opinion. This prevents a finding of substantial evidence for the RFC and finding of non-disability.

(3) The ALJ failed to comply with 20 C.F.R. § 404.1520c(b)(2) or support with substantial evidence her analysis of Ms. Schroeder's Medical Opinion. This prevents a finding of substantial evidence for the RFC and finding of non-disability.

(Doc. No. 8.)

## II. EVIDENCE

### A. Personal and Vocational Evidence

Mories was born in July 1971 and was 52 years old at the time of her administrative hearing (Tr. 18, 29), making her a "person closely approaching advanced age" under Social Security regulations. *See* 20 C.F.R. § 404.1563(d). She has a limited education. (Tr. 29.) She has no past relevant work. (*Id.*)

### B. Relevant Medical Evidence[1]

On October 4, 2022, Mories saw cardiologist Tarif Kanaan, M.D., for follow up and reported

[1] The Court's recitation of the medical evidence is not intended to be exhaustive and is limited to the evidence cited in the parties' Briefs.

experiencing chest tightness and pressure, as well as shortness of breath with exertion. (*Id.* at 484.) This caused her to be nervous and anxious, and she thought about dying. (*Id.*) She told Dr. Kanaan her primary care physician had referred her to a psychiatrist. (*Id.*) Mories denied palpitations, dizziness, and syncope. (*Id.*) She endorsed increased lower extremity edema and told Dr. Kanaan she had been taking Lasix. (*Id.*) Dr. Kanaan noted normal findings on examination, including an EKG, and ordered a nuclear stress test. (*Id.* at 485.)

On December 8, 2022, Mories saw rheumatologist Ali Amin, M.D., for a new patient evaluation. (*Id.* at 560.) Mories reported pain and tenderness to the touch of her bilateral feet, ankles, knees, wrists, and hands. (*Id.*) Movement, standing, and walking worsened her pain, while nothing alleviated it. (*Id.*) Mories told Dr. Amin her pain interfered with her activities of daily living. (*Id.* at 560-61.) She endorsed numbness and tingling in her hands but denied any limb weakness. (*Id.* at 563-64.) On examination, Dr. Amin found no swelling, tenderness, or reduced range of motion of the shoulders, elbows, wrists, hips, knees, and spine. (*Id.* at 563.) Regarding Mories' hands, Dr. Amin found no swelling, tenderness over all hand joints but no synovitis, full range of motion, and positive Phalen and Tinel tests. (*Id.* at 563, 565.) Dr. Amin concluded there were no findings of inflammatory arthritis on examination. (*Id.* at 564.) He ordered lab work, imaging, and an EMG. (*Id.* at 564-65.)

On February 23, 2023, Mories saw Ryan R. Wagner, Psy.D., for a psychological consultative examination. (*Id.* at 516-21.) When asked about the basis for her disability claim, Mories reported a past open-heart surgery and "really bad" panic attacks. (*Id.* at 516.) She told Dr. Wagner she had completed eleventh grade and received special education services for learning difficulties while in school. (*Id.* at 517.) She reported being held back a grade and that she had "significant difficulties with behavior[,] including regular suspensions." (*Id.*) The longest job she held lasted nine years, but she had not worked for the past two years. (*Id.*) She denied being terminated. (*Id.*) She reported "concern about work limitations,"

including adapting to changes in the workplace, consistently attending to work tasks, concentrating, managing frustration with customers, anxiety, and emotions, and learning new roles. (*Id.*) Mories received medication management through her primary care physician and denied treatment by a mental health professional. (*Id.*) She denied any mental health hospitalizations. (*Id.*) She endorsed crying spells, fatigue, loss of energy, feeling helpless and restless, irritability, indecisiveness, low motivation, occasional insomnia, poor concentration, low mood, social withdrawal, loss of pleasure in activities, heart palpitations, shortness of breath, rapid pulse, sweating, and chills/clammy hands. (*Id.* at 518.) She described sleep difficulties and lapses in grooming/hygiene because of low motivation. (*Id.*) She struggled to complete household chores because of physical limitations and lack of motivation. (*Id.*) She did not drive. (*Id.*) She struggled to use the stove and oven because of concentration problems. (*Id.*) She told Dr. Wagner she had difficulty shopping for groceries because of her anxiety. (*Id.*) She managed her medications, although sometimes she forgot, but she struggled to pay bills because of her forgetfulness. (*Id.*) She reported intermittent contact with her family, online contact through social media, and attempts to help with her grandson. (*Id.*) She denied hobbies. (*Id.*)

On examination, Dr. Wagner found Mories cooperative with "periodic facial grimaces" that appeared to indicate physical discomfort. (*Id.*) Dr. Wagner further found adequate effort and level of understanding. (*Id.*) Mories maintained consistent eye contact throughout the evaluation. (*Id.*) She tracked the conversation "without significant difficulty." (*Id.*) Dr. Wagner found "fast and pressured" speech but normal thought content, a depressed and tearful mood and affect, tense posture, tense vocalizations, apprehensive facial expressions, and moist palms. (*Id.* at 518-19.) Mories appeared to have a level of intellectual functioning below normal limits. (*Id.* at 519.) Dr. Wagner diagnosed Mories with obsessive-compulsive disorder, post-traumatic stress disorder, major depressive disorder, recurrent, moderate, and borderline intellectual functioning. (*Id.* at 519-20.)

In the "Functional Assessment" section of his report, Dr. Wagner stated as follows:

> What is your assessment of the claimant's abilities and limitations in understanding, carrying out and remembering instructions, both one-step and complex?
>
> - The claimant's performance on a brief verbal reasoning task was suggestive of difficulty understanding instructions.
> - Her performance on a brief short term memory task was suggestive of difficulty remembering instructions.
> - The claimant did not have difficulty understanding and responding to questions posed during the examination today.
> - The claimant reported problems learning work tasks including difficulty learning new information and following instructions.
>
> What is your assessment of the claimant's abilities and limitations in sustaining concentration and persisting in work-related activity at a reasonable pace?
>
> - The claimant was able to follow the conversation during the interview and did not ask for regular repetition of questions.
> - The claimant had difficulty completing tasks assessing attention during the evaluation which suggests difficulty with concentration and focus.
> - She presented as highly anxious which contributed to concentration problems during the evaluation.
> - The claimant reported a history of problems with concentration in work settings which negatively affected completion of work duties.
>
> What is your assessment of the claimant's abilities and limitations in maintaining effective social interaction on a consistent and independent basis, with supervisors, coworkers, and the public?
>
> - The claimant presented as depressed which may impact interpersonal interaction in work settings including limited or negative social interaction.
> - The claimant reported problems with limited social interaction and social withdrawal.
> - The claimant presented with intellectual limitations which may impact her ability to understand and respond to supervisory feedback.
> - The claimant reported problems with conflicts in work settings.

What is your assessment of the claimant's abilities and limitations in dealing with normal pressures in a competitive work setting?

- The claimant presented as highly anxious when discussing current pressures which may impact her mood stability in a competitive work setting.
- The claimant reported problems managing pressure in activities such as grocery shopping which contributed to experiences of increased anxiety.
- Her presentation was indicative of intellectual limitations which may negatively impact her ability to manage normal work pressures.
- The claimant reported problems managing pressure in prior work settings which contributed to mistakes and errors.

(*Id.* at 520-21).

On May 2, 20203, Mories saw Anne Schroeder, PT, conducted a Functional Capacity Evaluation ("FCE"). (*Id.* at 613-23.) Schroeder opined that Mories' "minimal overall level of work" fell within the sedentary range. (*Id.* at 613.) Schroeder noted that Mories was "self limiting with activity due to concern over heart rate levels. During testing heart rate never exceeded 90 bpm." (*Id.*) Schroeder stated:

> **Minimal Overall Level of Work: Falls within the Sedentary range.** Exerting up to .0 pounds of force occasionally (Occasionally: activity or condition exist up to 1/3 or the time) and/or a negligible amount of force frequently (Frequently: activity or condition exist from 1/3 to 2/3 or the time) to lift, carry, push, pull, or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing or brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met. *Please note that the overall level of work was significantly influenced by the client's self-limiting and inconsistent behavior. Therefore, the Sedentary level of work indicates a minimum ability rather than a maximum ability. A maximum overall level of work cannot be determined at this time due to the self-limiting and inconsistent behavior.* **Please see the Task Performance Table for specific abilities.**
>
> **Tolerance for the 8-Hour Day: Based on this evaluation, the client is incapable of sustaining the Sedentary level of work for an 8-hour day/40 hour week. Although this client demonstrates sitting ability sufficient for Sedentary work, her performance on the remainder of the test indicates that she is unable to sustain Sedentary work for 8 hours due to fatigue, as measured by changes in heart rate and performance.** *Please note that the tolerance for the 8-hour day was significantly influenced by the client's self-*

> *limiting and inconsistent behavior and indicates her minimal rather than her maximal ability.*
>
> **Self Limiting Behavior**: The client self-limited on 21% of the 19 tasks. Performance on the self-limiting tasks indicates a minimum rather than a maximum ability. A maximum on these tasks could not be determined due to the self-limiting behavior. Self-limiting behavior means that the client stopped the task before a maximum effort was reached. Possible causes of self-limiting behavior include: (1) pain; (2) psychosocial issues such as fear of reinjury, anxiety, or depression; and/or (3) attempts to manipulate test results. Although it is difficult to determine the causes of seif-limiting behavior, our research indicates that motivated clients self-limit on no more than 20% of test items. if the self-limiting exceeds 20%, then psychosocial and/or motivational factors are affecting test results.

(*Id.*) (emphasis in original). Schroeder opined that the "observed clinical inconsistencies" noted in the report "significantly impacted" the FCE results and recommendations. (*Id.* at 615.)

On exam, Schroeder found full range of motion in the shoulders, neck, spine, and knees, 4/5 shoulder strength limited by pain, and a symmetric gait. (*Id.* at 616.) Schroeder opined that the grip strength data "indicate[d] 'very strong' evidence of low effort and inconsistent behavior." (*Id.* at 619.) Schroeder noted Mories "did not demonstrate any pain behaviors" during the evaluation. (*Id.* at 615.)

**C. State Agency Reports**

**1. Mental Impairments**

On February 27, 2023, Mary Hill, Ph.D., reviewed the record and opined that Mories had moderate limitations in all four of the "Paragraph B" criteria. (*Id.* at 72.) Dr. Hill further opined that Mories could "understand and remember a variety of mild to moderately complex, 3-4 step tasks," "carry out a variety of mild to moderately complex, 3-4 step tasks in a work environment that did not require a fast pace," "interact with others on an occasional and superficial basis within the work environment," and respond to routine changes in the workplace. (*Id.* at 75-77.)

On June 6, 2023, on reconsideration, Sylvia Chen, Ph.D., affirmed Dr. Hill's findings regarding the "Paragraph B" criteria. (*Id.* at 83-84.) Dr. Chen opined:

> Despite functional limitations associated w/ the established psych MDIs, the clmt retains the ability to understand, carry out and remember simple instructions, make simple work-related decisions, and has the ability to sustain concentration, attention, and pace sufficient enough for the completion of simple tasks for two-hour intervals over the course of a typical eight-hour workday. Given the clmt's mental related symptoms and difficulty regulating emotions on a sustained basis, the clmt would function best in an environment that requires only occasional interactions with coworkers, supervisors, and the public in a familiar, low stress setting that has no significant changes in task expectations or require high production rate or pace.

(*Id.* at 89.)

### 2. Physical Impairments

On December 26, 2022, Mehr Siddiqui, M.D., reviewed the record and opined that Mories could lift/carry twenty pounds occasionally and ten pounds frequently, sit for about six hours in a workday, and stand/walk for about six hours in a workday. (*Id.* at 73-75.) She could occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds. (*Id.* at 74.) She could frequently stoop and crawl and occasionally kneel and crouch. (*Id.*) She must avoid all exposure to hazards such as machinery and heights. (*Id.*)

On June 17, 2023, on reconsideration, Gail Mutchler, M.D., affirmed Dr. Siddiqui's exertional and postural limitations. (*Id.* at 86-87.) Dr. Mutchler further opined that Mories needed to avoid all exposure to hazards and concentrated exposure to extreme heat/cold, humidity, and pulmonary irritants. (*Id.* at 87.)

## D. Hearing Testimony

During the June 6, 2024 hearing, Mories testified to the following:

- She lives in a house with her boyfriend, her 32-year-old daughter, and her 18-year-old son. (*Id.* at 46-47.) Her bedroom is upstairs. (*Id.* at 47.) There is no bathroom upstairs. (*Id.*) The laundry is in the basement. (*Id.*) She holds a valid driver's license but does not drive because of her anxiety. (*Id.* at 47-48.) Her boyfriend drives her to places. (*Id.* at 48.) She cannot use public transportation because of her anxiety. (*Id.*)
- She completed tenth grade. (*Id.*) She tried to get her GED but failed the examination. (*Id.*)

- She has never sought emergency treatment or been hospitalized for mental health issues. (*Id.* at 50.) She saw a therapist, but her therapist left the practice six months ago and her doctor has not set her up with a new one. (*Id.*) She found therapy helpful. (*Id.* at 51.) She stopped taking medication for her mental health because they were making her sick. (*Id.*) Her doctors are working on finding her a medication that does not interact with her other medications and does not make her sick. (*Id.*)

- She is in pain all the time. (*Id.* at 52.) She hurts from her neck to her feet. (*Id.*) Her back, neck, wrists, hands, and knees hurt. (*Id.*) If she stands for too long, her feet feel like they are on fire. (*Id.*) Her ankles tingle and hurt if she walks for too long. (*Id.*) Sitting in an office chair hurts her shoulders and neck. (*Id.* at 53.)

- She can stand or walk for about 15 minutes before needing to sit down and rest. (*Id.*) She can sit upright for about 10 minutes before needing to change positions. (*Id.*) She can "barely lift" a gallon of milk because of her pain. (*Id.*) She uses her right arm more than her left, because she cannot lift her left arm all the way up. (*Id.*) She must lift a gallon of milk with both hands. (*Id.* at 53-54.) She cannot reach out in front of her with her left arm. (*Id.* at 54.) She could not reach forward type on a keyboard for very long. (*Id.* at 54-55.) She can barely put her hair in a ponytail; sometimes her daughter must do it for her. (*Id.* at 55.)

- She has Hashimoto's, which makes her tired and irritable. (*Id.*) She will have one good day and then a bad day where she feels irritable and tired and does not want to get out of bed. (*Id.*) She feels depressed and cannot eat. (*Id.*) She feels like that every other day. (*Id.*)

- She has "really bad anxiety" and PTSD. (*Id.* at 56.) She cannot go to a grocery store and be around a crowd of people for long. (*Id.*) She does not go anywhere. (*Id.*) She goes out maybe once a week. (*Id.*) She gets depressed at times. (*Id.*) She gets scared and thinks she is going to die and leave her family. (*Id.*) She has memory problems. (*Id.*)

- She cannot walk on her treadmill because her chest starts to hurt and she starts breathing heavily. (*Id.* at 57.) She needs to exercise for her heart, but she can barely do that because she starts sweating and getting chest tightness. (*Id.*) She wonders if her anxiety is causing it. (*Id.*)

The ALJ found Mories had no past relevant work. (*Id.* at 60.) The ALJ then posed the following hypothetical question:

> [F]or that first hypothetical I would like you to assume a hypothetical person of Ms. Mories' age, education and past work. Further assume this hypothetical person can perform work at the light exertional level. Can frequently stoop or crouch, can occasionally climb stairs or ramps or a crane, can never climb ladders, ropes, scaffolds or balance as that term is used for occasionally. Must avoid all exposure to dangerous moving machinery and unprotected heights

> with occasional exposure to extreme cold, extreme heat, humidity, fumes, dust, odors, gases and poor ventilation, with work that can be learned in 30 days or less with simple/routine tasks, simple/work-related decisions and routine workplace changes, no production rate pace work such as on an assembly line or hourly productivity goals, occasional interaction with co-workers, no tandem tasks, occasional interaction with supervisors and through the initial training period occasional interaction with the general public. Is there any work for such a hypothetical person?

(*Id.* at 60-61.)

The VE testified that the hypothetical individual would be able to perform representative jobs in the economy, such as inspector and hand packager, marker, and sorter. (*Id.* at 61.)

The ALJ modified the hypothetical to add an option to change positions no more frequently than every 30 minutes while remaining on task. (*Id.*) The VE testified that the previously identified jobs could still be performed, although the VE reduced the numbers to account for employer tolerances. (*Id.* at 61-62.) The VE further testified that the hypothetical person could also perform the job of hospital products assembler. (*Id.* at 62.)

## III. STANDARD FOR DISABILITY

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315, 404.1505(a).

A claimant is entitled to a POD only if the claimant: (1) had a disability; (2) was insured when the claimant became disabled; and (3) filed while the claimant was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4). *See also Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th

Cir. 2010); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that they are not currently engaged in "substantial gainful activity" at the time of the disability application. 20 C.F.R. § 404.1520(b). Second, the claimant must show that they suffer from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. § 404.1520(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education, or work experience. *See* 20 C.F.R. § 404.1520(d). Fourth, if the claimant's impairment or combination of impairments does not prevent the claimant from doing their past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent the claimant from doing their past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

Here, Mories was insured on the alleged disability onset date, March 28, 2020, and remained insured through September 30, 2025, the date last insured ("DLI"). (Tr. 15-16.) Therefore, in order to be entitled to POD and DIB, Mories must establish a continuous twelve-month period of disability commencing between these dates. Any discontinuity in the twelve-month period precludes an entitlement to benefits. *See Mullis v. Bowen*, 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F.2d 191, 195 (6th Cir. 1967).

## IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2025.

2. The claimant has not engaged in substantial gainful activity since March 28, 2020, the alleged onset date (20 CFR 404.1571 *et seq*.).

3. The claimant has the following severe impairments: polyarthralgia, recurrent and moderate major depressive disorder, and anxiety (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: she can frequently stoop or crouch; she can occasionally climb stairs or ramps, kneel, or crawl; she can never climb ladders, ropes, or scaffolds, or balance, as that term is used vocationally. She must avoid all exposure to dangerous moving machinery and unprotected heights. Occasional exposure to extreme cold, extreme heat, humidity, fumes, dusts, odors, gases, and poor ventilation. With work that can be learned in 30 days, or less, with simple routine tasks, simple work-related decisions, and routine workplace changes. With no production rate pace work, such as on an assembly line or with hourly productivity goals. Occasional interaction with coworkers, no tandem tasks, occasional interaction with supervisors, after the initial training period, and occasional interaction with the general public.

6. The claimant has no past relevant work (20 CFR 404.1565).

7. The claimant was born on July **, 1971, and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).

8. The claimant has a limited education (20 CFR 404.1564).

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy the claimant can perform (20 CFR 404.1569 and 404.1569a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 28, 2020, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 18-30.)

## V. STANDARD OF REVIEW

The Social Security Act authorizes narrow judicial review of the final decision of the Social Security Administration (SSA)." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011). Specifically, this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence has been defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In determining whether an ALJ's findings are supported by substantial evidence, the Court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

Review of the Commissioner's decision must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The findings of the Commissioner are not subject to reversal, however, merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-73 (6th Cir. 2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached."). This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the

Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g., White v. Comm'r of Soc. Sec*., 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec*., 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996)); *accord Shrader v. Astrue*, No. 11-1300, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, No. 1:10-cv-734, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, No. 2:10-CV-017, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-cv-1982, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. ANALYSIS

All three of Mories' assignments of error challenge the ALJ's evaluation of the medical opinion evidence in the record. Since Mories' claim was filed after March 27, 2017, the Social Security Administration's new regulations ("Revised Regulations") for evaluation of medical opinion evidence apply to this claim. *See Revisions to Rules Regarding the Evaluation of Medical Evidence (Revisions to Rules)*, 2017 WL 168819, 82 Fed. Reg. 5844 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.

Under the Revised Regulations, the Commissioner will not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings, including those from your medical sources." 20 C.F.R. § 404.1520c(a). Rather, the Commissioner shall "evaluate the persuasiveness" of all medical opinions and prior administrative medical findings using the

factors set forth in the regulations: (1) supportability;[2] (2) consistency;[3] (3) relationship with the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors, including but not limited to evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of the agency's disability program's policies and evidentiary requirements. 20 C.F.R. §§ 404.1520c(a), (c)(1)-(5). However, supportability and consistency are the most important factors. 20 C.F.R. § 404.1520c(b)(2).

The Revised Regulations also changed the articulation required by ALJs in their consideration of medical opinions. The new articulation requirements are as follows:

> (1) Source-level articulation. Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.
>
> (2) Most important factors. The factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be. Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision. We may, but

[2] The Revised Regulations explain the "supportability" factor as follows: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).

[3] The Revised Regulations explain the "consistency" factor as follows: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

> are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record.
>
> (3) Equally persuasive medical opinions or prior administrative medical findings about the same issue. When we find that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported (paragraph (c)(1) of this section) and consistent with the record (paragraph (c)(2) of this section) but are not exactly the same, we will articulate how we considered the other most persuasive factors in paragraphs (c)(3) through (c)(5) of this section for those medical opinions or prior administrative medical findings in your determination or decision.

20 C.F.R. §§ 404.1520c(b)(1)-(3).

"Although the regulations eliminate the 'physician hierarchy,' deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how [he/she] considered the medical opinions' and 'how persuasive [he/she] find[s] all of the medical opinions.'" *Ryan L.F. v. Comm'r of Soc. Sec.,* No. 6:18-cv-01958-BR, 2019 WL 6468560, at *4 (D. Ore. Dec. 2, 2019) (quoting 20 C.F.R. § 416.920c(a), (b)(1)). A reviewing court "evaluates whether the ALJ properly considered the factors as set forth in the regulations to determine the persuasiveness of a medical opinion." *Id.*

**A. Drs. Hill and Chen**

In her first assignment of error, Mories argues that the ALJ "failed to comply with 20 C.F.R. § 404.1520c(b)(2)" in evaluating the opinions of state agency reviewing sources Drs. Hill and Chen and that the ALJ's analysis lacks the support of substantial evidence. (Doc. No. 8 at 8.) Mories asserts that the ALJ's determination that some parts of Dr. Hill's and Dr. Chen's opinions contained language that was vague or was not in vocationally-defined terms failed to satisfy the requirements of § 404.1520c(b)(2). (*Id.* at 8-9.) Mories maintains that the ALJ's conclusion "(a) assumes that (as opposed to explaining why) the language is not vocationally-defined and (b) does not consider further evidence relevant to supportability and consistency." (*Id.* at 9.) Relying on this Court's decision in *Whalen v. Commissioner of Social Security*, Case No. 1:24-CV-01928, 2025 WL 1452713 (N.D. Ohio May 21, 2025), *report and recommendation*,

Mories argues that "terse, general statements of supportability and/or consistency are insufficient to uphold an ALJ's decision." (*Id.* at 10.) Mories asserts that the ALJ failed to discuss the consistency of Dr. Hill and Dr. Chen's opinions. (*Id.* at 12.) In addition, Mories maintains that the ALJ's supportability analysis is "underdeveloped" and uses "Specific Vocational Preparation (SVP) terminology, which Plaintiff would argue is not vocationally defined for the salient information." (*Id.* at 13.)

The Commissioner responds that the ALJ "properly considered the prior administrative medical findings." (Doc. No. 12 at 8.) Relying on cases from this Court, the Commissioner argues that reframing limitations into vocationally relevant terms is proper. (*Id.*) (citations omitted). In addition, the Commissioner asserts that the "work that can be learned in 30 days, or less" language is vocationally defined and similar to the SVP language, as Mories herself points out, as well as with the regulatory definition of unskilled work. (*Id.* at 9) (citing 20 C.F.R. 404.1568(a)). The Commissioner maintains that the ALJ discussed the supportability and consistency of the prior administrative medical findings, and that "an ALJ's 'discussion of the record evidence' that the state agency consultants relied upon 'can be understood to touch upon both supportability and consistency, as required by the regulations.'" (*Id.* at 9-10) (quoting *Mary E. O. v. O'Malley*, No. 3:23-CV-00344-CRS, 2024 WL 3876477, at *7 (W.D. Ky. July 24, 2024), *report and recommendation adopted by* 2024 WL 3868249 (W.D. Ky. Aug. 19, 2024)).

In reply, Mories argues that the ALJ's "cursory consistency analysis and problematic supportability analysis in this case does not satisfy the regulations…and is not excused by the deference of the substantial evidence standard." (Doc. No. 13 at 1.) Mories asserts that the Commissioner fails to address the non-binding authority on which Mories relies on in her brief. (*Id.* at 1-2.) Mories maintains that while the ALJ has discretion, that discretion does not include "arbitrarily rejecting vocationally relevant language into other [non-applicable] vocational language." (*Id.* at 2.)

In the decision, the ALJ reviewed the record evidence and noted findings inconsistent with disability, such as:

- "In discussing the medical evidence of record in more detail, despite the March 2020 alleged onset date, there is little treatment during 2020."
- "Similarly, there is little treatment during 2021."
- "[T]here was no evidence of anxiety or depression, she was alert and oriented . . ."
- "On August 29, 2022, the claimant reported her appetite and energy levels were good, she felt good, she had no health complaints, and she slept well."
- "An examination showed her judgment and insight were normal, and she was alert and oriented to person, time, and place."
- "[S]he denied she experienced muscle pain, depression, insomnia, and anxiety."
- "She was also referred to behavioral health for her mental issues. (12F/11). On July 25, 2023, the claimant was prescribed medications for anxiety and depression, she was told to continue taking diclofenac sodium for pain, and she was advised to lose weight. (15F/3). No medical records appear in the file after July 2023."

(Tr. 23-24.) The ALJ further found as follows:

> As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are not entirely consistent with the evidence in the file. For instance, at the hearing, she testified she her [sic] memory is poor, she rarely leaves her house because she becomes anxious in crowds, she is depressed and scared. However, at the consultative examination, the claimant recalled personal historic information without significant difficulty, she recalled 4 digits forward, 2 digits backward, and 2 out of 3 words after a brief delay. (11F/4). In October 2022, the claimant complained of nervousness and anxiety. (8F/4). She was later referred to behavioral health and prescribed medication to manage her anxiety and depression. (12F/11; 15F/3). However, in January 2021, an examination revealed no evidence of anxiety or depression. (1F/6). In December 2022, the claimant denied she experienced depression and anxiety, and an examination revealed a normal affect and intact judgment and insight. (16F/12-13). In her function report, the claimant did not indicate she had trouble getting along with others. (4E/7). Rather, she indicated she was able to go shopping with her boyfriend and daughter once or twice a week, she went camping in the summer, and she socialized with others in person, on the phone, and through text and video chat. (4E/6). At the consultative examination, the claimant's posture was tense, and she presented as depressed and tearful, yet she was cooperative and maintained consistent eye contact. (11F/3-4). In December 2022, an examination showed the claimant's affect was normal.

> (16F/13). All of this evidence suggests the claimant's mental symptoms are not as disabling as she alleged. Even so, the undersigned has accounted for them by including the following limitations: the claimant can perform work that can be learned in 30 days, or less, with simple routine tasks, simple work-related decisions, and routine workplace changes. She cannot perform production rate pace work, such as on an assembly line, or with hourly productivity goals. She can have occasional interaction with coworkers, no tandem tasks, occasional interaction with supervisors, after the initial training period, and occasional interaction with the general public.

(*Id.* at 24.)

In weighing and analyzing the state agency reviewing physicians' opinions, the ALJ found as follows:

> With regard to mental limitations, at the initial level, Dr. Hill found the claimant could understand, remember, and carry out a variety of mild to moderately complex 3-4 step tasks, in a work environment that did not require a fast pace, interact with others on an occasional and superficial basis, and respond to routine workplace changes. (2A/8-9). Some of the language used in these prior administrative medical findings is not vocationally defined; 3-4 step tasks, fast pace, and superficial basis. As a result, it does not adequately articulate the limitations for use in the residual functional capacity assessment. The undersigned finds these prior administrative medical findings persuasive only insofar as they indicate there are limitations in the areas of: understanding, remembering, and applying information; interacting with others; and concentrating, persisting, and maintaining pace. In her function report, the claimant indicated she has trouble with her memory, concentration, and completing tasks, and she did not go out of her house alone. (4E/5, 7). At the consultative examination, the claimant recalled 4 digits forward but only 2 digits backward and only 2 out of 3 words after a brief delay, and she was unable to perform serial 7s. (11F/4).
>
> Accordingly, in the residual functional capacity assessment above, the undersigned has used more specific, vocationally defined, and policy compliant language to express the moderate limitations arising from the claimant's mental impairments. Specifically, the claimant is limited to work that can be learned in 30 days or less, simple, routine tasks, simple work-related decisions, no production rate pace work, such as on an assembly line or with hourly productivity goals, and occasional interaction with others. The undersigned concludes the remainder of the findings are persuasive, as they were supported by the evidence in the file, at the time of the doctor's review, and they are consistent with the complete evidence. For example, in her function report, the claimant indicated she did not go out alone due to her anxiety. (4E/5). At the hearing, she explained she becomes anxious in crowds. In October 2022, the claimant informed her medical provider she struggled with nervousness,

> anxiety, and thoughts of death. (8F/4). Such evidence is consistent with limiting the claimant to only occasional interaction and responding to routine workplace changes.
>
> At the reconsideration level, Dr. Chen found the claimant could understand, carry out, and remember simple instructions, make simple work-related decision, sustain concentration, attention, and pace sufficient enough for the completion of simple tasks for 2-hour intervals over the course of an 8-hour workday, she could have occasional interactions with coworkers, supervisors, and the public in a familiar, low stress setting with no significant changes in task expectation or required high production rate or pace. (4A/10). Some of the language used in these prior administrative medical findings is not vocationally defined, so it does not adequately articulate the limitation for use in a residual functional capacity assessment. This language is " "low stress" setting and "significant changes". The undersigned finds the problematic language in these prior administrative medical findings persuasive only insofar as they indicate there are limitations in the area of adapting and managing oneself. This finding is consistent with the consultative examination, which found the claimant presented as depressed and tearful, and her facial expression varied from apprehensive to downcast. (11F/4).
>
> Accordingly, in the residual functional capacity assessment above, the undersigned has used more specific, vocationally defined, and policy compliant language to express the moderate limitation, in the area of adapting or managing oneself, arising from the claimant's mental impairments. Specifically, she can adapt to routine workplace changes. The undersigned finds the remainder of these findings to be persuasive, as they were supported by the evidence in the file, at the time of the doctor's review, and they are consistent with the complete evidence. For example, at the consultative examination, the claimant recalled 4 digits forward but only 2 digits backward and 2 out of 3 words after a brief delay. (11F/4). Such evidence is consistent with limiting the claimant to simple work.

(*Id.* at 27-28.)

The ALJ considered the supportability and consistency of the state agency reviewing sources' opinions as required by the regulations. (*Id.* at 23-28.) The ALJ determined that the findings of Drs. Hill and Chen that the ALJ did not reject for a lack of specificity, vocational definitions, or policy compliance were supported by and consistent with record evidence in the file at the time of their review, including: Mories' report that she did not go out alone because of her anxiety; Mories' hearing testimony regarding her anxiety in crowds; Mories' reports to her medical provider that she struggled with nervousness, anxiety,

and thoughts of death; and Mories' performance recalling digits and words at the consultative examination. (*Id.*)

The ALJ bears the responsibility for determining a claimant's RFC. 20 C.F.R. § 404.1546(c). An ALJ may properly convert opined limitations into vocationally relevant terms. *See Lopez v. Comm'r of Soc. Sec.*, Case No. 1:22-CV-01801, 2024 WL 1580101, at *20 (N.D. Ohio Apr. 11, 2024) ("[R]eframing of limitations in medical opinions for clarity, sometimes described as 'convert[ing]' limitations 'into vocationally relevant terms in [a claimant's] RFC,' is not improper.") (citing *Modro v. Comm'r of Soc. Sec.*, No. 2:18-cv-900, 2019 WL 1986522, at *7 (S.D. Ohio May 6, 2019) (additional citation omitted). In addition, the "work that can be learned in 30 days, or less" language used by the ALJ is similar to the regulatory definition of unskilled work: "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. . . For example, we consider jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, **and a person can usually learn to do the job in 30 days**, and little specific vocational preparation and judgment are needed." 20 C.F.R. 404.1568(a) (emphasis added). Moreover, the ALJ imposed additional limitations in the RFC, including work with simple routine tasks, simple work-related decisions, and routine workplace changes, no production rate pace work, such as on an assembly line, or with hourly productivity goals, occasional interaction with coworkers, no tandem tasks, occasional interaction with supervisors, after the initial training period, and occasional interaction with the general public.

It is the ALJ's job to weigh the evidence and resolve conflicts, and she did so here. While Mories would weigh the evidence differently, it is not for the Court to do so on appeal. The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton*, 246 F.3d at 772-73. There is no error.

For all of the foregoing reasons, the undersigned recommends the Court reject Mories' first assignment of error.

**B. Dr. Wagner**

In her second assignment of error, Mories argues that the ALJ "failed to comply with 20 C.F.R. § 404.1520c(b)(2)" in analyzing Dr. Wagner's opinion and that the ALJ's analysis lacks the support of substantial evidence. (Doc. No. 8 at 14.) Mories asserts that the ALJ failed to address consistency at all. (*Id.* at 15.) In addition, Mories maintains that the ALJ's supportability analysis lacks the support of substantial evidence "to the extent it over-relies upon the assertion that Dr. Wagner's opinions are overly vague. . . ." (*Id.*) Mories argues that "[t]he ALJ offered no basis for concluding" that she "could perform work learned in a certain amount of time without regard to Dr. Wagner's concerns" regarding understanding and remembering instructions, which Mories asserts were "otherwise supported by the identified exam findings." (*Id.*)

The Commissioner responds that the ALJ found Dr. Wagner's opinion to be "'somewhat persuasive yet vague'" and that "it did not set forth the most Plaintiff could do despite her limitations, as required by 20 C.F.R. § 404.1525(a)(1)." (Doc. No. 12 at 13) (citations omitted). The Commissioner argues that, notwithstanding that finding, the ALJ found Dr. Wagner's examination supported limitations in understanding, remembering, or applying information, concentrating, persisting, or maintaining pace, and adapting or managing oneself. (*Id.* at 14.) The ALJ then incorporated the following limitations in the RFC: (1) work that can be learned in 30 days or less; (2) simple, routine tasks; (3) simple, work-related decisions; (4) routine workplace changes; and (5) no production-rate pace work, such as on an assembly line or with hourly productivity goals. (*Id.*) The Commissioner asserts that Mories fails to show any error of law, and substantial evidence supports the ALJ's evaluation of Dr. Wagner's opinion. (*Id.*)

In the RFC analysis, the ALJ weighed and analyzed Dr. Wagner's opinion as follows:

> In February 2023, the claimant underwent a psychological evaluation by Ryan Wagner, PsyD. (11F). Dr. Wagner opined the claimant had difficulty understanding and remembering instructions, concentrating and focusing, she may have difficulty with interpersonal interaction, she may have difficulty understanding and responding to supervisory feedback, and she may have difficulty with mood stability and in managing normal work pressures. (11F/5-6). The undersigned finds this opinion somewhat persuasive yet vague. Residual functional capacity is defined as the most the claimant can perform despite her limitations. (20 CFR 404.1525(a)(1)). Dr. Wagner failed to provide specifics, such as the level of complexity of instructions the claimant could handle, at what pace she could work, how often she could interact with others, and how often she could adjust to changes at work. This detracts from the overall persuasiveness of his opinion. Nevertheless, Dr. Wagner somewhat supports his opinion with his examination, which found the claimant was cooperative, her eye contact was consistent, her conversation speed was fast and pressured, her facial expression varied from apprehensive to downcast, she recalled 4 digits forward and 2 digits backward and 2 out of 3 words after a brief delay, and she could not perform serial 7s. (11F/3-4). Such evidence supports the doctor's finding the claimant has some difficulty understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; and adapting or managing oneself. However, it does not support his opinion she has difficulty interacting with others.

(Tr. 26.)

The ALJ failed to address the consistency of Dr. Wagner's opinion. In considering an analogous set of facts, the Southern District of Ohio recently found as follows:

> "To analyze inconsistency, the ALJ should have explained specific instances of inconsistency in the record, as opposed to a general statement concerning the record as a whole." *Westover v. Comm'r of Soc. Sec.*, No. 4:24-CV-02204-SL, 2025 WL 2611399, at *9 (N.D. Ohio Sept. 9, 2025), *report and recommendation adopted*, 2025 WL 2720743 (N.D. Ohio Sept. 24, 2025); *see also Farrah W.*, 2024 WL 514496, at *7 (finding that the ALJ failed to properly evaluate the consistency factor when he did not compare the expert's opinion to the plaintiff's treatment history or other evidence from the record).
>
> * * *
>
> As noted by the ALJ, Dr. Kurzhals did not provide his opinion in functional terms or note the degree of limitation as to the four areas of mental functioning ("Paragraph B criteria"). 20 C.F.R. § 416.920a. Instead, Dr. Kurzhals summarized Plaintiff's subjective complaints and his own observations to conclude that the information suggests "there may be limitation" or "there is a limitation" as to each category. (*Id.* at PAGEID #: 736–37.)

Based on this lack of specificity, the ALJ determined that Dr. Kurzhals' examination report was "not persuasive." The ALJ summarized Dr. Kurzhals' opinion as follows:

> After completing a consultative psychiatric examination of the claimant, Robert Kurzhals, Ph.D. concluded there "may be limitation" in the claimant's ability to understand, remember, and carry out instructions; there "may be limitations" in her ability to sustain concentration and persist in work-related activity at a reasonable pace; "there is limitation" in the claimant's ability to maintain effective social interaction on a consistent and independent basis, with supervisors, coworkers, and the public; and "there is limitation" in the claimant's ability to deal with normal pressures in a competitive work setting (Ex. 12F/6). This opinion, to the extent it is an opinion, is not persuasive. It does not express the claimant's residual capacity in functional terms, nor does it describe the degree to which the claimant is limited in any of the functional domains. Nonetheless, it is based on an examination of the claimant. However, it appears that Dr. Kurzhals relied, at least in part, on the claimant's subjective reporting about the frequency and severity of her symptoms in providing his statements.

(ECF No. 7, PAGEID #: 50.)

Upon review, the Undersigned agrees with Plaintiff that the ALJ erred with respect to his consistency analysis. The ALJ does not compare Dr. Kurzhals' opinion to other medical evidence or nonmedical evidence. **Even though Dr. Kurzhals' opinion was vague and provided no degree for Plaintiff's mental limitations, that did not excuse the ALJ from analyzing the opinion under the relevant factors.** *See Tracy F. v. Comm'r of Soc. Sec.*, No. 2:23-CV-00188, 2023 WL 8614065, at *7 (S.D. Ohio Dec. 13, 2023), *report and recommendation adopted*, No. 2:23-CV-00188, 2024 WL 689322 (S.D. Ohio Feb. 20, 2024) ("Today, an ALJ who dismisses a psychological opinion solely because it is 'speculative' risks running afoul of the new articulation requirements.")

**That said, as the Magistrate Judge explained in *Tracy F.*, finding an error does not always require reversal.** *Id.* Instead, the Undersigned finds that, under these circumstances, the Commissioner has the better of the arguments on this issue. **That is, even if the ALJ did err in evaluating the consistency factor, any error was harmless because Dr. Kurzhals' opinion was vague, did not opine a specific degree of limitations, and thus, would not have been instructive in the ALJ's crafting of the RFC.** *See Howard H. v. Comm'r of Soc. Sec.*, No. 2:20-CV-4932, 2022 WL 765217, at *4 (S.D. Ohio Mar. 14, 2022) (finding harmless error when the ALJ discounted a vague medical opinion noting a "somewhat elevated risk" in certain categories because, even if the opinions were given "full credence" on consistency, "they still would not

be 'stated using vocationally relevant terms'" or "guide the ALJ to a more limited residual functional capacity").

Plaintiff contends that any error of law requires reversal, but that is not necessarily the case. (ECF No. 8, at PAGEID #: 880.) Although the Sixth Circuit has not yet addressed whether a harmless error analysis can be applied to an ALJ's failure to explain the supportability or consistency factors under 20 C.F.R. § 404.1520c(b)(2), district courts in this Circuit have found that the harmless error analysis articulated in *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004) can be applied to an ALJ's evaluation of a medical-source opinion under those new regulations. *See, e.g.*, *Neal B. v. Comm'r of Soc. Sec. Admin.*, No. 3:23-CV-75, 2024 WL 963713, at *4 (S.D. Ohio Mar. 5, 2024) (citing *Musolff v. Comm'r of Soc. Sec.*, No. 1:21-CV-1739, 2022 WL 1571864, at *13 (N.D. Ohio Apr. 27, 2022) (citing cases), *report and recommendation adopted,* No. 1:21-CV-1739, 2022 WL 1568478 (N.D. Ohio May 17, 2022); *see also Jason M. v. Comm'r of Soc. Sec. Admin.*, No. 3:21-CV-00272, 2022 WL 4591305, at *6–7 (S.D. Ohio Sept. 30, 2022)); *Wilson C. v. Comm'r of Soc. Sec.*, No. 3:20-cv-457, 2022 WL 4244215, at *6–7 (S.D. Ohio Sept. 15, 2022). Courts have reasoned that, because 20 C.F.R. § 404.1520c "is part of the regulatory framework that replaced the treating physician rule and its concomitant good reasons requirement," it logically follows that *Wilson*'s harmless error analysis would apply to its replacement, as they aim to achieve the same goals. *See Burba v. Comm'r of Soc. Sec.*, No. 1:19-CV-905, 2020 WL 5792621, at *4 (N.D. Ohio Sept. 29, 2020) (finding that the "regulatory predecessor to 20 C.F.R. § 404.1520c, 20 C.F.R. § 1527(d)(2)" share the same goals).

The Undersigned agrees with the analysis set forth by other courts in this Circuit and therefore finds that "an ALJ's failure to explain his consideration of the supportability and consistency factors when determining the persuasiveness of a medical opinion can only be excused as harmless error if: (1) the medical opinion is patently deficient, (2) the ALJ adopted the medical opinion or made findings consistent with the opinion, or (3) the goal of the regulation was otherwise met." *Wilson*, 2022 WL 4244215, at *6–7 (citing *Wilson*, 378 F.3d at 547). But, "[s]uch an error cannot be excused as harmless for other reasons, including where substantial evidence in the record may support the ALJ's conclusion regarding the persuasiveness (or lack thereof) of the medical opinion." *Bryan W. v. Comm'r of Soc. Sec. Admin.*, No. 1:22-CV-00281, 2023 WL 5847649, at *5 (S.D. Ohio Sept. 11, 2023) (collecting cases).

**Here, applying the *Wilson* test, the Undersigned finds that any failure by the ALJ to address the consistency factor was harmless because, under the first *Wilson* factor, Dr. Kurzhals' opinion was patently deficient due to its lack of articulable degree of mental functional limitations.** The Sixth Circuit has found medical opinions to be patently deficient when they lack evidentiary support or sufficient explanation, such as in the case of a check-box form. *See Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 474–75 (6th Cir. 2016)

> (finding an ALJ's failure to meet the regulatory requirements was harmless error because the check box form without evidentiary support was "weak evidence at best" and met the Sixth's [sic] Circuit's "patently deficient" standard); *see also Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 441 (6th Cir. 2017) (finding that a doctor's "conclusory opinion, which provided no supporting findings or records and consisted largely of one word answers, circles, and checkmarks" failed under *Hernandez*). Arguably, a medical assessment that lacks any quantifiable (or more specific) estimate as to a plaintiff's degree of functional limitation is just as unhelpful as a check-box form opining a degree of limitation without explanation. Indeed, in this case, even if the ALJ found Dr. Kuzhals's opinion to be persuasive, there were no tangible, specific restrictions to incorporate into the RFC. *See Anissa H. v. Comm'r of Soc. Sec.*, No. 2:21-CV-5315, 2023 WL 1857822, at *8 (S.D. Ohio Feb. 9, 2023), *report and recommendation adopted*, 2023 WL 2692415 (S.D. Ohio Mar. 29, 2023) (finding a medical opinion to be patently deficient when it "provided no functional limitations and no specific assessments on which the ALJ could otherwise rely" such that any error by the ALJ was harmless); *see also Penn v. Comm'r of Soc. Sec.*, No. 1:19-CV-00389, 2020 WL 1288809, at *3 (N.D. Ohio Mar. 18, 2020) (finding a medical opinion to be "patently deficient in that it gave no actual functional limitations" such that harmless error applied to the ALJ's analysis of the opinion). Thus, the Undersigned finds that Dr. Kuzhals' opinion was patently deficient because it lacked any degree or specification as to Plaintiff's mental functional limitations such that the ALJ's failure to analyze the consistency factor with respect to the opinion was harmless error.
>
> Moreover, the Undersigned finds that Plaintiff has not demonstrated any prejudice by the ALJ's rejection of Dr. Kurzhals' opinion. As the Commissioner argues, the ALJ's RFC did include limitations with respect to Plaintiff's mental functioning, finding that Plaintiff had moderate limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing itself. (ECF No. 11, at PAGEID #: 908) (citing ECF No. 7, at PAGEID #: 44–45.) Plaintiff has not articulated any additional limitations opined by Dr. Kurzhals that should have been included and were not. *See Tracy F.*, 2023 WL 8614065, at *5 (finding no prejudice when plaintiff failed to identify any opined mental RFC limitation that the ALJ rejected). As such, Plaintiff has failed to demonstrate she was prejudiced by the ALJ's rejection of Dr. Kurzhals' opinion.

*Sheila N. v. Comm'r of Social Sec.*, Case No. 3:25-cv-00290, 2026 WL 1983152, at **4-6 (S.D. Ohio July 9, 2026) (emphasis added), *report and recommendation*.

The Court finds that, like in *Sheila N.*, the ALJ's error in failing to address the consistency of Dr. Wagner's opinion is harmless, as Dr. Wagner's opinion was "patently deficient due to its lack of articulable

degree of mental functional limitations," and "there were no tangible, specific restrictions to incorporate into the RFC." *Id.* at *6. Furthermore, as the Commissioner points out, the ALJ's RFC included limitations with respect to Mories' mental functioning, and Mories has not identified any additional limitations opined by Dr. Wagner that should have been included and were not.

For all of the foregoing reasons, the undersigned recommends the Court reject Mories' second assignment of error.

**C. PT Schroeder**

In her final assignment of error, Mories argues that the ALJ "failed to comply with 20 C.F.R. § 404.1520c(b)(2)" in analyzing PT Schroeder's opinion and that the ALJ's analysis lacks the support of substantial evidence. (Doc. No. 8 at 16.) Mories asserts that "the ALJ highlights the portion of Ms. Schroeder's report discussing self-limiting behavior—without acknowledging the fact that this point was based on a 21% finding where 20% is the cut-off—and then applies this reasoning to a portion of the opinion that Ms. Schroeder did not without any material reason for doing so." (*Id.*) Mories maintains that there "is no basis" for the ALJ's determination that self-limitation in the performance of tasks while bending over, working overhead, or climbing stairs should be applied to lifting. (*Id.* at 17.) In addition, Mories argues that "[t]he ALJ dismissed the sedentary limitations without any pertinent supportability basis." (*Id.*) Mories implies the ALJ further erred in analyzing the consistency of Schroeder's opinion, as the cited examination—which showed normal range of motion in the neck, shoulders, wrists, and elbows, with no swelling or subjectiveness tenderness—was consistent with Schroeder's examination and showed subjective tenderness of all hand joints. (*Id.*)

The Commissioner responds that the ALJ found Schroeder's opinion to be unpersuasive and "reasonably concluded" that Schroeder's findings regarding self-limiting and inconsistent behavior "suggested that Plaintiff was capable of greater lifting abilities than she demonstrated." (Doc. No. 12 at 15)

(citations omitted). Therefore, the ALJ found that Schroeder's examination findings did not support Schroeder's opinion. (*Id.*) In addition, the Commissioner argues that the ALJ further found Schroeder's opinion to be inconsistent with other evidence in the record and, based on other normal findings, "reasonably found that the subjective tenderness in her hands was not severe enough to be consistent with limiting [Mories] to sedentary work." (*Id.* at 16.) Therefore, the Commissioner maintains, "the ALJ had sufficient evidence on which to base her determination that Plaintiff was capable of greater than sedentary exertional work." (*Id.*)

In reply, Mories argues that the Commissioner failed to contest her argument "that the only consistency evidence that the ALJ cited was an exam that was not inconsistent with Ms. Schroeder's exam." (Doc. No. 13 at 3.)

In the RFC analysis, the ALJ weighed and analyzed Schroeder's opinion as follows:

> In May 2023, the claimant underwent a functional evaluation by Anne Schroeder, PT. (18F/3). Ms. Schroeder opined the claimant's maximum overall level of work could not be determined due to the claimant's self-limiting and inconsistent behavior. (18F/5), while noting the minimum was sedentary. Also opining, the claimant was incapable of sustaining the sedentary level of work for an 8-hour day/40 hour week, although she demonstrated an ability sufficient for sedentary work, her performance on the remainder of the test indicated she was unable to sustain sedentary work due to fatigue, yet the tolerance for an 8-hour workday was significantly influenced by the claimant's self-limiting and inconsistent behavior, and indicated her minimal, rather than maximal ability. (Id.).
>
> The undersigned finds this opinion unpersuasive. Residual functional capacity is defined as the most the claimant can perform despite her limitations. (20 CFR 404.1525(a)(1)). However, Ms. Schroeder provided the minimum level of work she believed the claimant could perform, and refused to offer the maximum noting this was due to the claimant's self-limiting and inconsistent behavior, (18F/5). This detracts from the overall persuasiveness of her opinion. Ms. Schroeder fails to support her opinion with her examination because her findings were tainted by the claimant's self-limiting and inconsistent behavior. (18F/5). Although Ms. Schroeder found the claimant could only occasionally floor to waist lift 8 pounds, occasionally waist to eye level lift 6 pounds, and two hand carry 11 pounds, she also noted the claimant did not demonstrate any pain behaviors during the test. (18F/7). This evidence suggest the claimant was capable of lifting more weight than she demonstrated.

> Additionally, Ms. Schroeder's opinion is inconsistent with the remainder of the medical record. For instance, in December 2022, an examination revealed full range of motion in the claimant's neck, shoulders, elbows, and wrists without swelling or subjective tenderness, full range of motion in her hands with subjective tenderness over all joints but no synovitis, normal range of motion without swelling or subjective tenderness in her hips, knees, feet, and ankles, no subjective tenderness throughout the spine, and no sacroiliac joint subjective tenderness. (16F/13). While such evidence is consistent with limiting the amount the claimant lifts/carries, her subjective tenderness was not severe enough to be consistent with limiting her to work at the sedentary exertional level, where she would lift/carry no more than 10 pounds. Rather, the undersigned has accounted for the subjective tenderness in the claimant's joints by limiting her to work at the light exertional level, where she would lift/carry a maximum of 20 pounds.

(Tr. 25-26.)

The Court finds substantial evidence supports the ALJ's findings regarding Schroeder's opinion. The ALJ considered the supportability and consistency of Schroeder's opinion as required by the regulations. (*Id.*) As the ALJ noted, Schroeder's opinion states: "*Please note that the tolerance for the 8-hour day was significantly influenced by the client's self-limiting and inconsistent behavior and indicates her minimal rather than her maximal ability.*" (*Id.* at 613) (emphasis in original). Schroeder further stated that the "observed clinical inconsistencies" noted in the report "significantly impacted" the FCE results and recommendations. (*Id.* at 615..) The ALJ correctly stated that Schroeder found Mories "did not demonstrate any pain behaviors" during the FCE. (*Id.*) Therefore, the ALJ determined that Mories was capable of lifting more than what Schroeder opined.

Contrary to Mories' consistency argument, the ALJ did not find that Schroeder's *examination* was inconsistent with the examination findings in December 2022; rather, the ALJ found Schroeder's *opined limitations* inconsistent with the examination findings from December 2022 – after the ALJ had also found Schroeder's opinions unsupported by Schroeder's examination findings.

It is the ALJ's job to weigh the evidence and resolve conflicts, and she did so here. While Mories would weigh the evidence differently, it is not for the Court to do so on appeal. The findings of the

Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton*, 246 F.3d at 772-73. There is no error.

For all of the foregoing reasons, the undersigned recommends the Court reject Mories' final assignment of error.

## VII. CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

Date: September 25, 2026

*s/ Jonathan Greenberg*
Jonathan D. Greenberg
United States Magistrate Judge

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).**